STATE OF NORTH CAROLINA v. JOSE JESUS GARCIA LOPEZ

No. 95PA08

(Filed 28 August 2009)

**Sentencing— prosecutor's argument—sentencing grid and aggravating factor—relevant but inaccurate**

The trial court erred during a sentencing proceeding for involuntary manslaughter and other offenses arising from drunken driving by allowing the prosecutor's argument concerning the sentencing grid, the effect of an aggravating factor, and merger. A jury's understanding that its determination of aggravating factors may have an effect on the sentence is relevant to its role in a sentencing proceeding, but the prosecutor's argument here was inaccurate and misleading. However, there was no likelihood of a different result without the argument and no prejudice.

Justice BRADY concurring in the result only.

Justice TIMMONS-GOODSON joins in the concurring opinion.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 188 N.C. App. 553, 655 S.E.2d 895 (2008), finding no error at trial and no prejudicial error in a sentencing proceeding which resulted in judgments entered on 30 May 2006 by Judge Ola M. Lewis in Superior Court, Columbus County. Heard in the Supreme Court 31 March 2009.

*Roy Cooper, Attorney General, by Isaac T. Avery, III, Special Counsel, for the State-appellant/appellee.*

*Nora Henry Hargrove for defendant-appellee/appellant.*

EDMUNDS, Justice.

In this case we consider the extent to which a party in a criminal case may address the jury as to defendant's potential sentence. We conclude that the prosecutor's argument detailing the effect of the jury's finding of an aggravating factor on defendant's sentence was inaccurate and misleading. Therefore, the trial court erred in over-ruling defendant's objection to this argument. However, because we also find that the error was harmless, we affirm the result reached by the Court of Appeals.

**STATE v. LOPEZ**

[363 N.C. 535 (2009)]

At trial, the State presented evidence that at approximately six o'clock p.m. on 19 December 2004, defendant Jose Jesus Garcia Lopez was driving his Jeep between eighty and one hundred miles per hour when he crossed the highway center line and collided with a Mazda being driven by Natalie Housand. Housand was killed in the collision and her passenger, Adam Melton, was injured. Defendant disappeared into nearby woods, but later emerged a short distance away and was arrested. Retrograde extrapolation indicated that, at the time of the accident, defendant had a blood alcohol concentration of 0.18.

Defendant was indicted for second-degree murder pursuant to N.C.G.S. § 14-17, felony death by vehicle pursuant to N.C.G.S. § 20-141.4, and felony hit and run pursuant to N.C.G.S. § 20-166(a), all relating to the death of Housand. Defendant also was indicted for assault with a deadly weapon inflicting serious injury on Melton pursuant to N.C.G.S. § 14-32(b). The court conducted a bifurcated trial consisting of a guilt-innocence phase followed by a separate sentencing proceeding.

After the parties made their closing arguments at the conclusion of the guilt-innocence phase, the court submitted to the jury separate verdict sheets for each offense. As to the charge of second-degree murder, the verdict sheet permitted the jury to find defendant guilty of second-degree murder, involuntary manslaughter, or misdemeanor death by motor vehicle, or to find defendant not guilty. The jury found defendant guilty of involuntary manslaughter and guilty of the other three crimes. Because involuntary manslaughter is a lesser-included offense of felony death by vehicle, the involuntary manslaughter conviction merged into the conviction of felony death by vehicle. *See State v. Kemmerlin*, 356 N.C. 446, 474-75, 573 S.E.2d 870, 890 (2002) (explaining that a lesser conviction will merge into a greater conviction when all the essential elements of the lesser conviction are also essential elements included in the greater conviction).

During the sentencing proceeding that followed, the State argued to the jury that it should find the aggravating factor that defendant "knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person." N.C.G.S. § 15A-1340.16(d)(8) (2007). Defendant contends the trial court abused its discretion by overruling his objections and allowing the State to make the following jury argument and accompanying blackboard presentation during the sentencing proceeding:

Folks, I'm going to write up some numbers. These numbers are the—basically, the sentencing grid for the offenses that you found the Defendant guilty of.

([Prosecutor] writes on blackboard.)

This is the involuntary manslaughter. Presumptive range is 13 to 16 months. Assault with a deadly weapon inflicting serious injury, presumptive range is 20 to 25 months. This is the hit and run. The presumptive range, 5 to 6 months. Now, there was a felony death by motor vehicle, and that merged in because it had a lot of the same elements of this manslaughter conviction, so it merges in here. All right. So, that's kind of already in; that's why I didn't put it up here.

The judge sentences within this presumptive range, and that's what I've highlighted for you, unless the State puts up an aggravating factor. Okay? We have to present to you an aggravating factor, and you have to find it beyond a reasonable doubt. Just like anything else that we present to you, you have to make a determination, we have to prove it to you beyond a reasonable doubt.

If we prove aggravators, which I've submitted one to you, then that gives the option for the judge to return a sentence in this range. Okay? It doesn't mean that's where it comes from, it just gives her that option.

Now, the State of North Carolina—I'm going to put a couple more numbers up here for you. We have a minimum and then we have a maximum. Okay. In other words, the minimum, say if the minimum was 13 months, there would be a corresponding maximum sentence that goes with that. All right. If we got up to this range, this aggravator, say we're in the aggravated range of 20, there would be a corresponding maximum that goes with that. And this one would be 24. This one would be 47. And this one would be 10. And these are all in months. Okay?

The jury found the aggravating factor to be present beyond a reasonable doubt. After hearing additional testimony and argument from both defendant and the State, the court found two factors in mitigation, but determined that they were outweighed by the aggravating factor. The court imposed aggravated sentences in each judgment, to be served consecutively, resulting in a total of fifty-nine to eighty-one months incarceration.

STATE v. LOPEZ

[363 N.C. 535 (2009)]

Defendant appealed. The Court of Appeals found that the trial court erred in allowing the State to explain merger and sentencing possibilities in its sentencing proceeding argument but concluded that this error was harmless. *State v. Lopez*, 188 N.C. App. 553, 561, 655 S.E.2d 895, 900 (2008). This Court granted petitions for discretionary review filed by the State and by defendant.

Defendant contends that the prosecutor's argument relating to the effect of an aggravating factor on the sentencing grid was irrelevant to the jury's decision whether the aggravating factor was present. Defendant further asserts that the argument had the effect of advising the jury that, because two of the convictions merged, one of its verdicts had no practical effect. The State responds that the argument was proper. While we find that the jury's understanding of aggravating factors is relevant to sentencing, we also find that the prosecutor's argument introduced error into the trial. The State's discussion of the application of the sentencing grids was inaccurate. In addition, the State's argument was misleading because it indicated potential specific sentencing ranges for defendant when defendant's sentencing range had not been, and in this case could not be, determined at the time the argument was made. However, because there is no reasonable possibility that but for the error a different result would have been reached, we affirm the result of the Court of Appeals.

The standard under which we review allegedly "improper closing arguments that provoke timely objection from opposing counsel is whether the trial court abused its discretion by failing to sustain the objection." *State v. Jones*, 355 N.C. 117, 131, 558 S.E.2d 97, 106 (2002). An abuse of discretion occurs only when a ruling " 'could not have been the result of a reasoned decision.' " *Id.* (quoting *State v. Burrus*, 344 N.C. 79, 90, 472 S.E.2d 867, 875 (1996)). The trial court "has broad discretion to control the scope of closing arguments," *State v. Cummings*, 361 N.C. 438, 465, 648 S.E.2d 788, 804 (2007), *cert. denied*, —— U.S. ——, 170 L. Ed. 2d 760 (2008), and generally, "counsel's argument should not be impaired without good reason," *State v. Price*, 326 N.C. 56, 83, 388 S.E.2d 84, 99, *sentence vacated on other grounds*, 498 U.S. 802, 112 L. Ed. 2d 7 (1990), *cert. denied*, 514 U.S. 1124, 131 L. Ed. 2d 879 (1995). However, argument that misinforms a jury by purporting to present accurate information when that information is misleading is just such a good reason. *State v. Zuniga*, 320 N.C. 233, 253, 357 S.E.2d 898, 911, *cert. denied*, 484 U.S. 959, 98 L. Ed. 2d 384 (1987) (stating that a jury argument is

not improper so long as it does not "travel into the fields of conjecture or personal opinion").

"In jury trials the whole case as well of law as of fact may be argued to the jury." N.C.G.S. § 7A-97 (2007). In interpreting this statute, we have held that the penalty prescribed for a criminal offense is part of the law of the case and that "[i]t is, consequently, permissible for a criminal defendant in argument to inform the jury of *the statutory punishment* provided for the crime for which he is being tried." *State v. McMorris*, 290 N.C. 286, 287-88, 225 S.E.2d 553, 554 (1976) (emphasis added). Thus, "[c]ounsel may . . . in any case, read or state to the jury a statute or other rule of law relevant to such case, *including the statutory provision fixing the punishment for the offense charged*." *State v Britt*, 285 N.C. 256, 273, 204 S.E.2d 817, 829 (1974) (emphasis added).

However, sentencing procedure has changed significantly since this Court decided *Britt* and *McMorris. See generally* Stevens H. Clarke, *Law of Sentencing, Probation, and Parole in North Carolina* 46-52 (Inst. of Gov't, Chapel Hill, N.C., 2d ed. 1997) (discussing the history and effect of indeterminate sentencing, Fair Sentencing, and Structured Sentencing). When this Court considered *Britt* and *McMorris*, the sentencing range ordinarily could be determined simply by reference to the statute defining the offense. *See id.* at 47. Now, under Structured Sentencing, most criminal statutes define an offense as being of a particular class. *See, e.g.*, N.C.G.S. § 14-27.2(b) (2007) (stating that first-degree rape is a Class B1 felony). Except for Class A felonies and other offenses for which a particular punishment is set by statute, the range of sentences that the trial court may impose becomes known only after a series of findings and calculations. After a jury returns its verdict or verdicts, it must then determine whether any submitted aggravating factors exist, thereby permitting a defendant's sentence to be enhanced. *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403 (2004). In addition, the court independently determines whether any submitted mitigating factors also exist and, if so, whether the factors in aggravation outweigh the factors in mitigation, or the factors in mitigation outweigh the factors in aggravation, or the factors are in equilibrium. N.C.G.S. § 15A-1340.16 (2007). After weighing aggravating factors found by the jury and mitigating factors found by the court, the court decides whether to impose an aggravated, presumptive, or mitigated sentence.

When a defendant is convicted of more than one offense, the court has the option to consolidate offenses or to impose concurrent or consecutive sentences. *Id.* § 15A-1340.15 (2007). The court also calculates a defendant's criminal history category based on the number and gravity of any prior convictions. Only after all these findings are made and calculations completed does the court determine the minimum sentencing range by reference to a statutory grid that takes these factors into account. *Id.* § 15A-1340.17(c) (2007). Once the court decides on a minimum sentence, the corresponding maximum sentence is found in another grid. *Id.* § 15A-1340.17(d), (e) (2007).

Thus, a criminal sentence under Structured Sentencing is determined through numerous interlocking decisions and findings made by the trial court after the jury has completed its work. As a result, even though a jury has returned its verdict in the guilt-innocence proceeding, counsels' jury arguments forecasting the sentence are usually no better than educated estimates.

The perils of attempting to predict a sentence to a jury are amply demonstrated in the case at bar. The prosecutor advised the court before making its sentencing argument that "I'm just putting the numbers up, and I'll have the minimum on the high end, and I'm also going to put up the highest [defendant] could possibly get on the high end." However, while the record on appeal does not contain a copy of the blackboard presentation used during the prosecutor's argument, the transcript indicates that the numbers the prosecutor quoted to the jury were misleading. For instance, the prosecutor told the jury, "This is the involuntary manslaughter. Presumptive range is 13-16 months." Yet, in the sentencing grid set out in section 15A-1340.17(c), thirteen to sixteen months is the presumptive range of *minimum* sentences for a defendant who is convicted of involuntary manslaughter, a Class F offense, and who has no criminal history. A court sentencing such a defendant chooses a minimum sentence in the thirteen to sixteen month range set out in the grid found in section 15A-1340.17(c), then locates the corresponding maximum sentence from the grid found in section 15A-1340.17(d). Thus, the prosecutor's statement that thirteen to sixteen months was the presumptive range for defendant's involuntary manslaughter conviction was inaccurate and misleadingly low. The ranges represented by the prosecutor for defendant's assault and hit and run convictions are similarly problematic.

The rules of procedure and evidence are meant to assure that the evidence a jury hears and considers is reliable. *See Chambers v.*

STATE v. LOPEZ

[363 N.C. 535 (2009)]

*Mississippi*, 410 U.S. 284, 302, 35 L. Ed. 2d 297, 313 (1973) (describing rules of evidence and procedure as "designed to assure both fairness and reliability in the ascertainment of guilt and innocence"); *accord* N.C.G.S. § 8C-1, Rule 102(a) (2007) ("These rules [of evidence] shall be construed . . . to the end that the truth may be ascertained and proceedings justly determined."). Jury arguments should be similarly accurate. However, as the preceding discussion demonstrates, even a well-intentioned argument purporting to forecast a sentence under Structured Sentencing will almost invariably be misleading. If the jury believed from the prosecutor's argument that it understood the exact effect of the decision it was being called upon to make, it was mistaken.[1]

Nevertheless, while attempts to forecast a sentence are fraught with risk, a jury's understanding that its determination of the existence of any aggravating factors may have an effect on the sentence imposed is relevant to its role in a sentencing proceeding. As a result, consistent with section 7A-97, parties may explain to a jury the reasons why it is being asked to consider aggravating factors and may discuss and illustrate the general effect that finding such factors may have, such as the fact that a finding of an aggravating factor may

---

1. In fact, an arresting number of sentencing permutations arise from defendant's convictions. Each felony of conviction had a different classification and therefore fell within a different range. Treating the conviction of involuntary manslaughter as Count 1, the conviction of felony hit and run as Count 2, and the conviction of felony assault as Count 3, the trial court could have:

1. Consolidated all three counts and imposed a mitigated sentence;
2. Consolidated all three counts and imposed a presumptive sentence;
3. Consolidated all three counts and imposed an aggravated sentence;
4. Imposed consecutive aggravated sentences on each count (as happened in fact);
5. Imposed consecutive presumptive sentences on each count;
6. Imposed consecutive mitigated sentences on each count;
7. Consolidated Counts 1 and 2 but imposed a consecutive sentence on Count 3;
8. Consolidated Counts 1 and 3 but imposed a consecutive sentence on Count 2;
9. Consolidated Counts 2 and 3 but imposed a consecutive sentence on Count 1;
10. Found that as to Count 1 the mitigating factors outweighed the aggravating factor, but not as to Counts 2 and 3;
11. Found that as to Count 2, the mitigating factors and aggravating factor were in equilibrium, that the aggravating factor outweighed the mitigating factors as to Count 1, and that the mitigating factors outweighed the aggravating factor as to Count 3;
12. Etc.

allow the court to impose a more severe sentence or that the court may find mitigating factors and impose a more lenient sentence. *State v. Chapman*, 359 N.C. 328, 372-73, 611 S.E.2d 794, 826 (2005) (discussing use of hypothetical examples in arguments to the jury).

Accordingly, while we are aware that the capable trial judge could not foresee the analysis we undertake today, we conclude that the trial court abused its discretion in overruling defendant's objection to the State's argument, which argument contained misleading information.

Although the trial court erred, nonconstitutional errors warrant reversal only when "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." *Id.* § 15A-1443(a) (2007). "The burden of showing such prejudice under this subsection is upon the defendant." *Id.*; *see, e.g.*, *State v. Rosier*, 322 N.C. 826, 829, 370 S.E.2d 359, 361 (1988). Defendant argues that the jury's realization that one conviction would merge with another, thereby reducing defendant's sentence, may have persuaded jurors to find the aggravating factor. Because the impact of the improper argument cannot be ascertained, defendant contends that a new sentencing hearing is necessary.

Our review of the record reveals that defendant has not met his burden of establishing that, but for the error, there is a reasonable possibility that the jury would have reached a different result. To establish the aggravating factor that defendant "knowingly created a great risk of death to more than one person by means of a . . . device which would normally be hazardous to the lives of more than one person," N.C.G.S. § 15A-1340.16(d)(8), the State must show that defendant used the device in a way that would normally be hazardous to the lives of more than one person and that a great risk of death was knowingly created. *See, e.g.*, *State v. Rose*, 327 N.C. 599, 605-06, 398 S.E.2d 314, 317-18 (1990) (discussing use of a weapon, whereas the case at bar involves a device, i.e., a vehicle).

As to whether defendant's Jeep was hazardous to the lives of more than one person, "[i]t is well settled in North Carolina that an automobile can be a deadly weapon if it is driven in a reckless or dangerous manner." *State v. Jones*, 353 N.C. 159, 164, 538 S.E.2d 917, 922 (2000). The conclusion is unavoidable that a vehicle driven at a high rate of speed by an intoxicated operator is normally hazardous to the lives of more than one person. *See State v. McBride*, 118 N.C. App.

316, 319-20, 454 S.E.2d 840, 842 (1995) (holding that a recklessly operated vehicle "constituted a device which in its normal use is hazardous to the lives of more than one person" and "any reasonable person should know that an automobile operated by a legally intoxicated driver is reasonably likely to cause death to any and all persons who may find themselves in the automobile's path").

As to whether defendant knowingly created a great risk of death, the overwhelming evidence found by the jury beyond a reasonable doubt established that defendant was voluntarily intoxicated and driving between eighty and one hundred miles per hour when he crossed the center line and collided with Housand's Mazda. No reasonable person could fail to know that such behavior creates a great risk of death. Although defendant testified that he did not remember driving, as a general rule "the law does not permit a person who commits a crime in a state of intoxication to use his own vice or weakness as a shelter against the normal legal consequences of his conduct." *State v. Bunn*, 283 N.C. 444, 457, 196 S.E.2d 777, 786 (1973) (citation and internal quotation marks omitted). Defendant cannot shelter behind his own claim that he drank himself into a stupor.

Accordingly, we perceive no likelihood that the result of the trial would have been different if the jury had not heard the improper argument. We affirm the Court of Appeals decision upholding the judgments of the trial court.

AFFIRMED.

Justice BRADY concurring in the result only.

I disagree with the majority's conclusion that the calculation of aggravating factors in a defendant's sentence is relevant to the jury's understanding of the presence of an aggravating factor. I would rule that the trial court abused its discretion by allowing the State to present to the jury any information relating to the effect of an aggravating factor on defendant's sentence. However, because overwhelming evidence in support of the aggravating factor exists, I believe the trial court's error was harmless, and I concur in the majority's result only.

In accordance with the decision of the Supreme Court of the United States in *Blakely v. Washington*, 542 U.S. 296 (2004), the General Assembly enacted N.C.G.S. § 15A-1340.16(a1) in 2005, which provides that absent an admission from the defendant, "only a jury

may determine if an aggravating factor is present in an offense." This is the trial jury's *sole role* under section 15A-1340.16 in a noncapital case. This responsibility is accomplished through a factual evaluation of the evidence presented at the guilt-innocence phase of the trial, unless the court determines that a separate sentencing proceeding is required. N.C.G.S. § 15A-1340.16(a1) (2007). Section 15A-1340.16 further provides that after a jury finds an aggravating factor, it is the trial court's responsibility to determine the defendant's sentence. *See also State v. Ahearn*, 307 N.C. 584, 597, 300 S.E.2d 689, 697 (1983) (stating that a trial judge has " 'discretion to increase or reduce sentences from the presumptive term upon findings of aggravating or mitigating factors, the weighing of which is a matter within [his] sound discretion" (quoting with approval *State v. Davis*, 58 N.C. App. 330, 333, 293 S.E.2d 658, 661, *disc. rev. denied*, 306 N.C. 745, 295 S.E.2d 482 (1982) (alteration in original))).

In the case *sub judice*, the State's closing argument was an attempt to circumvent the sentencing process set forth in section 15A-1340.16. By discussing the merger doctrine and displaying the presumptive minimum and maximum ranges of possible sentences, the State was enticing the jury to contemplate the duration of defendant's imprisonment. This is wholly improper under the framework of section 15A-1340.16.

Counsel should be given wide latitude when arguing before the jury. *See State v. Price*, 326 N.C. 56, 83, 388 S.E.2d 84, 99, *sentence vacated on other grounds*, 498 U.S. 802 (1990) *cert. denied*, 514 U.S. 1124 (1995) ("[C]ounsel's argument should not be impaired without good reason. . . ."). However, if the arguments counsel advances are irrelevant, they should be limited by the trial court. *Id.* at 83-84, 388 S.E.2d at 99-100 (stating that a "good reason" to limit the scope of counsel's closing argument is irrelevance (citing, *inter alia*, *Watson v. White*, 309 N.C. 498, 507, 308 S.E.2d 268, 274 (1983))). The jury was charged with answering one question: Did the evidence presented support the finding of the aggravating factor? This is purely a factual question, and much like in the guilt-innocence phase of the trial, the jury is asked to evaluate whether the State presented sufficient evidence to prove its case. This Court has ruled that in the guilt-innocence phase, "[t]he amount of punishment which a verdict of guilty will empower the judge to impose is totally irrelevant to the issue of a defendant's guilt. It is, therefore, no concern of the jurors'." *State v. Rhodes*, 275 N.C. 584, 588, 169 S.E.2d 846, 848 (1969) (citations omitted). The same logic applies here. The jury is being asked solely

STATE v. LOPEZ

[363 N.C. 535 (2009)]

whether the aggravator is present. Information regarding the effect of the aggravating factor on the trial court's ultimate sentencing decision is irrelevant to this determination.

Therefore, I cannot conclude with the majority that "a jury's understanding that its determination of the existence of any aggravating factors may have an effect on the sentence imposed is relevant to its role in a sentencing proceeding." Furthermore, I disagree that N.C.G.S. § 7A-97 entitles parties to "explain to a jury the reasons why it is being asked to consider aggravating factors and . . . discuss and illustrate the general effect that finding such factors may have, such as the fact that a finding of an aggravating factor may allow the court to impose a more severe sentence." Under section 7A-97, "[i]n jury trials the whole case as well of law as of fact may be argued to the jury." N.C.G.S. § 7A-97 (2007). However, even under section 7A-97, counsel may not argue "principles of law not relevant to the case." *See State v. Monk*, 286 N.C. 509, 515, 212 S.E.2d 125, 131 (1975) (citations omitted); *see also State v. McMorris*, 290 N.C. 286, 287, 225 S.E.2d 553, 554 (1976) (stating that the parties must argue "the law applicable to the facts of the case" and that "[t]he whole *corpus juris* is not fair game"). As explained above, the effect of an aggravating factor on a defendant's sentence is simply not relevant to the jury's determination of the existence of the factor. I would hold that it is error *in any case* for a trial court to allow either party to explain the effect an aggravating factor could have on a defendant's sentence.

While I disagree that the effect of an aggravating factor is ever relevant to a jury's determination of the presence of an aggravating factor, I agree with the majority's ultimate result finding that there was overwhelming evidence to support the existence of the aggravating factor. From the evidence presented in the guilt-innocence phase of the trial, it is clear that defendant knowingly operated his vehicle at a dangerously high rate of speed while he was intoxicated. Any reasonable jury would have made such a determination, even without the State's inappropriate closing argument. Therefore, defendant was not prejudiced by the error of the trial court. I therefore concur in the majority's result only.

Justice TIMMONS-GOODSON joins in this concurring opinion.