IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-260

Filed 20 February 2024

Edgecombe County, Nos. 19 CRS 51756-60

STATE OF NORTH CAROLINA

v.

DAVID NEAL COX

Appeal by Defendant from Judgments rendered 15 July 2022 by Judge L. Lamont Wiggins in Edgecombe County Superior Court. Heard in the Court of Appeals 29 November 2023.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Tamara S. Zmuda, for the State.*

> *Thomas, Ferguson & Beskind, LLP, by Kellie Mannette, for Defendant-Appellant.*

HAMPSON, Judge.

## **Factual and Procedural Background**

David Cox (Defendant) appeals from Judgments rendered upon convictions for three counts of statutory sex offense with a child under 15, five counts of sex offense by a parent, and two counts of statutory sex offense with a child by an adult. The Record before us, including evidence presented at trial, shows the following:

The alleged victim in this case is Margaret.[1]  Defendant moved in with Margaret's mother in 2007.  They married in 2008.  At that time, Margaret was eight years old, and her four siblings also resided in the house.  At trial, Margaret testified Defendant sexually abused her on numerous occasions between 2011 and 2016, when she was between the ages of eleven and sixteen years old.  According to Margaret, when she was sixteen years old and began dating, Defendant stopped sexually abusing her, but he continued to molest and grope her until she was 19.  Throughout this time, Margaret did not report the abuse to anyone.

Margaret's grandmother testified she was suspicious of Defendant's behavior when Margaret was young based on her observations of Defendant with Margaret at the grandmother's pool.  After observing Defendant forcibly kiss Margaret several times, her grandmother privately brought up the incident and asked her if everything was alright.  Margaret responded that everything was alright.

At trial, Margaret testified she first reported Defendant's abuse after witnessing what she believed was grooming behavior by Defendant toward Defendant's granddaughter who was three or four years old at the time.  At that point, it had been eight years since Defendant's abuse began.  Margaret testified she first disclosed Defendant's abuse to her grandmother, grandfather, and then-boyfriend.  Margaret's grandmother then called the police.  The following day, Margaret reported

---

[1] A pseudonym chosen by the parties pursuant to N.C.R. App. P. 42(b).

the abuse to her mother. To corroborate her account, Margaret then showed her mother where Defendant kept a penis pump and lubricant, which only he and Margaret knew about.

On 26 September 2019, Defendant was indicted for three counts of statutory sex offense with a child under fifteen, five counts of sex offense by a parent, and two counts of statutory sex offense with a child by an adult. Defendant's trial began 11 July 2022. In addition to Margaret's testimony, Margaret's cousin, Reagan,[2] testified about two prior encounters she had with Defendant. According to Reagan, when she was approximately fourteen years old, Defendant had stopped her from going up the stairs at Margaret's house. Defendant then moved her tank top and told Reagan she had a "nice tan line." Reagan did not report this incident at the time. A few months later, Reagan was swimming at Margaret's grandmother's house and was wearing a two-piece bathing suit. Reagan testified she was on her way to the bathroom when Defendant blocked her from entering. Defendant then moved Reagan's swimsuit bottom to a point where she felt uncomfortable and again commented she had a "nice tan line." According to Reagan's testimony, she reported this incident and the previous one to her parents later that day.

The State presented Beth Bruder Dagenhart, the Children's Advocacy Center Program Director at Southmountain Children and Family Services, as an expert

---

[2] A pseudonym chosen by the parties.

witness. The State asked to tender Dagenhart as an expert in the following fields:

> "[i]nterpretations of interviews of children who are suspected victims of sexual abuse. Profiles of sexually abused children. . . delayed reporting or delayed disclosure. What those reasons are based on her knowledge, training, and experience for a delay in disclosure. . . Denials of sexual abuse. And then finally common grooming practices, what constitutes grooming, and common grooming practices employed by child abusers.

Defendant responded, "That's a complicated tender but we will go ahead and stipulate, Your Honor, to her being an expert in forensic interviewing." The trial court then ordered the witness tendered "in the areas as stated by counsel for the State and upon stipulation of the defendant." Dagenhart's testimony explained generally what constitutes grooming, common grooming practices, denials of abuse, triggering events for disclosure, and delayed disclosure. Dagenhart did not testify about Margaret or offer any opinion about the present case.

On 15 July 2022, the jury returned verdicts finding Defendant guilty on all counts. The trial court sentenced Defendant to 1176 to 1471 months of imprisonment. Defendant gave oral Notice of Appeal in open court.

**Appellate Jurisdiction**

The trial court rendered Judgment and sentenced Defendant on 15 July 2022. The Record also reflects written Judgments signed by the trial court on 15 July 2022, but these Judgments are neither file-stamped nor certified by the Clerk. Rule 4 of the North Carolina Rules of Appellate Procedure provides appeal from a judgment *rendered* in a criminal case must be given either orally at trial or by filing written

notice of appeal with the clerk of superior court and serving copies thereof upon all adverse parties within fourteen days after entry of judgment. N.C.R. App. P. 4 (2023). Here, the Record reflects the written Judgments were signed by Judge L. Lamont Wiggins on 15 July 2022, and Defendant gave oral Notice of Appeal in open court on 15 July 2022. There is no dispute between the parties that Judgments were in fact entered and Defendant's oral Notice of Appeal was timely. Therefore, this Court has appellate jurisdiction over this appeal.[3]

## Issues Presented

The issues are whether the trial court (I) plainly erred by failing to exclude evidence of Defendant's prior conduct; (II) expressed an impermissible opinion in its qualification of Dagenhart as an expert witness; (III) plainly erred by admitting Dagenhart's expert testimony; and (IV) erred by precluding defense counsel from arguing the possible penalty Defendant faced if convicted.

## Analysis

I.     <u>Evidence of Prior Acts</u>

Defendant contends the trial court committed plain error by failing to exclude Reagan's testimony under Rule 404(b) because the incidents Reagan described were

---

[3] Nevertheless, we urge all parties in future to comply with Rule 9(b)(3) of the North Carolina Rules of Appellate Procedure, which provides: "Every pleading, motion, affidavit, or other document included in the printed record should show the date on which it was filed and, if verified, the date of verification and the person who verified it. Every judgment, order, or other determination should show the date on which it was entered." N.C.R. App. P. 9(b)(3) (2023).

not sufficiently similar to the conduct alleged in this case. Because Defendant did not object to the challenged testimony at trial, our review is limited to plain error. N.C.R. App. P. 10(a)(4) (2023) ("In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.").

"For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citation omitted). Further, "[t]o show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty.' " *Id.* (citing *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation omitted)). Thus, plain error is reserved for "the exceptional case where, after reviewing the entire record, it can be said the claimed error is a '*fundamental* error, something so basic, so prejudicial . . . that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused[.]' " *Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)) (emphasis in original).

Here, even if we were to assume without deciding the trial court's admission of evidence regarding Defendant's prior conduct was error, in light of the substantial

evidence of Defendant's guilt, Defendant failed to establish the jury would probably have reached a different result had the evidence not been admitted. Thus, any such error would not amount to plain error.

In this case, it was undisputed Defendant was Margaret's stepfather, they were not married, Defendant was in a parental role with respect to Margaret, and they lived in the same home at all relevant times in this case. Thus, the only element in dispute for each charge was the sexual act. At trial, Margaret testified with specificity about multiple instances of sexual abuse by Defendant from the time she was eleven to sixteen years old. Margaret's testimony recounted specific details about the time, place, and manner in which Defendant abused her. Further, several witnesses corroborated Margaret's testimony, including Margaret's grandmother and boyfriend, both of whom offered specific instances of concerning behavior Defendant exhibited toward Margaret. Finally, Margaret recounted revealing Defendant's penis pump and lubricant hidden beneath a ceiling tile in the bathroom to her mother, which she testified only she and Defendant knew about. This too corroborated her testimony. Based on this substantial evidence, we cannot conclude the jury would have probably reached a different result absent the challenged testimony. As such, Defendant has failed to meet his burden under the plain error standard. Consequently, the trial court did not commit plain error by failing to exclude the challenged evidence in the absence of an objection by Defendant.

II.    Expert Witness Qualification

Defendant contends the trial court erred by expressing an impermissible opinion during its qualification of Dagenhart as an expert witness. "The judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." N.C. Gen. Stat. § 15A-1222 (2023). Further, "[i]n instructing the jury, the judge shall not express an opinion as to whether or not a fact has been proved and shall not be required to state, summarize or recapitulate the evidence, or to explain the application of the law to the evidence." N.C. Gen. Stat. § 15A-1232 (2023). "In evaluating whether a judge's comments cross into the realm of impermissible opinion, a totality of the circumstances test is utilized." *State v. Jones*, 347 N.C. 193, 207, 491 S.E.2d 641, 649 (1997) (quoting *State v. Larrimore*, 340 N.C. 119, 155, 456 S.E.2d 789, 808 (1995)). "[A] trial court generally is not impermissibly expressing an opinion when it makes ordinary rulings during the course of the trial." *State v. Jones*, 358 N.C. 330, 355, 595 S.E.2d 124, 140 (2004) (citation omitted). Additionally, "[t]rial courts act as a gatekeeper in determining admissibility of expert testimony[.]" *State v. Walston*, 369 N.C. 547, 551, 798 S.E.2d 741, 745 (2017).

Here, the State questioned Dagenhart regarding her background and qualifications before tendering her as an expert witness. The State offered Dagenhart as an expert in interpretation of interviews of children who are suspected victims of sexual abuse, profiles of sexually abused children, delayed reporting or delayed disclosure, denials of sexual abuse, common grooming practices, and what constitutes

grooming. Defense counsel responded: "That's a complicated tender but we will go ahead and stipulate, Your Honor, to her being an expert in forensic interviewing." The trial court ordered the witness "tendered in the areas as stated by counsel for the State and upon stipulation of the defendant."

Contrary to the State's assertion, Defendant did not stipulate to Dagenhart's qualification as an expert in the full list of areas recited by the State. Defendant specified he stipulated only to Dagenhart's expertise in forensic interviewing. However, the trial court was still within its discretion to qualify Dagenhart as an expert in the remaining areas listed by the State. *See State v. King*, 366 N.C. 68, 74-75, 733 S.E.2d 535, 539-40 (2012). Still, the trial court made an ordinary ruling in the course of the trial in its gatekeeping role. *Walston*, 369 N.C. at 551, 798 S.E.2d at 745. The trial court made no extraneous statements or comments with respect to Dagenhart's qualifications.

We have distinguished between cases in which the defendant is herself qualified as an expert in the jury's presence, *Galloway v. Lawrence*, 266 N.C. 245, 250-51, 145 S.E.2d 861, 865-66 (1966), from cases in which the person tendered as an expert was not the defendant and the expert's testimony did not address the ultimate question to be decided by the factfinder. *In re Lee*, 69 N.C. App. 277, 289-91, 317 S.E.2d 75, 82-83 (1984). Here, Dagenhart was qualified in areas relevant to the case, but her expertise did not determine the ultimate question for the jury—whether Defendant had abused Margaret. Further, Dagenhart never testified as to her

opinion on Margaret's credibility or whether Margaret had been abused. In fact, the State clarified at the outset of its direct examination of Dagenhart that she had not spoken with Margaret.

> [Counsel for the State]: Now, Ms. Dagenhart, this is a case where you didn't do a forensic interview in this case; is that correct?
>
> [Dagenhart]: That's correct.
>
> [Counsel for the State]: And you've never interviewed [Margaret] or talked to her or anything about this; right?
>
> [Dagenhart]: No. I have not.

This exchange underscores the purpose of Dagenhart's testimony was provided to give the jury context to understand and evaluate Margaret's account, not to suggest what the jury should find. Thus, the trial court did not express an impermissible opinion by qualifying the expert witness in the areas listed by the State. Accordingly, we conclude the trial court did not err.

III.   Admission of Expert Witness Testimony

Defendant contends the trial court plainly erred by allowing Dagenhart to testify generally rather than applying her expertise to the facts of the case. The admission of expert testimony is governed by N.C. Gen. Stat. § 8C-1, Rule 702. In 2011, our General Assembly amended Rule 702(a) to mirror Federal Rule of Evidence 702(a) as amended at that time. *State v. Hunt*, 250 N.C. App. 238, 244, 792 S.E.2d 552, 558 (2016). "It follows that the meaning of North Carolina's Rule 702(a) now mirrors that of the amended federal rule." *Id.* (quoting *State v. McGrady*, 368 N.C.

880, 884, 787 S.E.2d 1, 5 (2016)). "And when the General Assembly adopts language or statutes from another jurisdiction, 'constructions placed on such language or statutes are presumed to be adopted as well.'" *McGrady*, 368 N.C. at 887, 787 S.E.2d at 7 (quoting *Sheffield v. Consol. Foods Corp.*, 302 N.C. 403, 427, 276 S.E.2d 422, 437 (1981)).

Rule 702(a) provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:
>     (1) The testimony is based upon sufficient facts or data.
>     (2) The testimony is the product of reliable principles and methods.
>     (3) The witness has applied the principles and methods reliably to the facts of the case.

N.C. Gen. Stat. § 8C-1, Rule 702(a) (2023). Federal and state jurisdictions alike allow an expert to testify generally. On this issue, the 2000 Advisory Committee Notes to Federal Rule of Evidence 702 state:

> Yet it might also be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case. . . The amendment does not alter the venerable practice of using expert testimony to educate the factfinder on general principles. For this kind of generalized testimony, Rule 702 simply requires that: (1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony "fit" the facts of the case.

Fed. R. Evid. 702 (2000 Advisory Committee Notes).

Here, the expert witness Dagenhart testified generally about the clinical meaning of the term "grooming" in the abuse process, delayed reporting of abuse, and common grooming practices, all of which were relevant to the jury's understanding of issues in the case. Under the above criteria in the 2000 Advisory Committee Notes, Dagenhart's general testimony on each of these issues was appropriate to give the jury necessary information to understand the testimony and evaluate it. First, Dagenhart was qualified by the trial court as an expert in grooming practices, delayed reporting, and forensic interviewing, among other things. These areas are outside of common knowledge, thus expertise can assist the factfinder. Based on the Record before us, there is no evidence Dagenhart's testimony was not reliable. Moreover, the Defendant did not object or call into question Dagenhart's testimony at trial. Finally, Dagenhart's testimony clearly fits the facts of the case. During the State's case in chief, Margaret repeatedly used the term "grooming" to describe Defendant's abusive behaviors toward her and identified specific behaviors she believed were grooming. She further testified she had learned about the term grooming and how to identify potential grooming when she was training to be a lifeguard, and that knowledge had helped her understand Defendant's abuse. Defendant questioned Margaret on cross-examination regarding her delay in disclosing the abuse. Thus, Dagenhart's testimony explained important general concepts of abuse to the jury that were relevant to the case. Therefore, consistent with Federal Rule of Evidence 702, Dagenhart's general testimony was admissible under N.C. Rule of Evidence 702(a).

Consequently, the trial court did not err by admitting Dagenhart's testimony.

IV.     Possible Penalty Argument

Defendant argues the trial court erred by sustaining the State's objection to defense counsel stating a guilty verdict on any of the charges would be a life sentence for Defendant during closing argument. "Ordinarily, the control of jury arguments is left to the sound discretion of the trial court and the trial court's rulings thereon will not be disturbed on appeal absent a showing of abuse of discretion." *State v. Jones*, 339 N.C. 114, 158-59, 451 S.E.2d 826, 850 (1994), *cert. denied*, 515 U.S. 1169, 115 S.Ct. 2634, 132 L. E. 2d 873 (1995) (citations omitted). Abuse of discretion may be found "only upon a showing that the ruling was so arbitrary that it could not have been the result of a reasoned decision." *Jones*, 347 N.C. at 213, 491 S.E.2d at 653 (citation omitted).

"In jury trials the whole case as well of law as of fact may be argued to the jury." N.C. Gen. Stat. § 7A-97 (2023). Our Supreme Court has interpreted this provision to mean "[c]ounsel may. . . read or state to the jury a statute or other rule of law relevant to such case, including the statutory provision fixing the punishment for the offense charged." *State v. Lopez*, 363 N.C. 535, 539, 681 S.E.2d 271, 274 (2009) (quoting *State v. Britt*, 285 N.C. 256, 273, 204 S.E.2d 817, 829 (1974)). However, counsel may not do so in a way that asks the jury "to consider the punishment as part of its substantive deliberations[.]" *State v. Wilson*, 293 N.C. 47, 57, 235 S.E.2d 219,

225 (1977). These rules "are meant to assure that the evidence a jury hears and considers is reliable." *Lopez*, 363 N.C. at 541, 681 S.E.2d at 275.

Here, during closing argument, defense counsel told the jury "conviction of any of these charges will practically be a life sentence. . . You know, the judge can't give probation. These sentences are all—[.]" At that point, the State objected, and the trial court sustained the objection and struck the argument. Unlike the cases above and those relied on in the parties' briefs, in this case defense counsel did not read the statute nor attempt to give a precise sentence range for each offense for which Defendant was charged. In fact, defense counsel did not frame the potential punishment in terms of years, but rather in terms of its impact on Defendant—that, based on Defendant's age, a conviction on any of the charges would effectively mean he would spend the rest of his life in prison.

Rather than merely informing the jury of the statutory penalties associated with the charges, defense counsel implied Defendant should not be convicted because the punishment would be severe—in other words, "counsel was asking the jury to consider the punishment as part of its substantive deliberations and this he may not do." *Wilson*, 293 N.C. at 57, 235 S.E.2d at 225. Thus, defense counsel's statement improperly commented upon the statutory punishment to sway the jury's sympathies in its substantive deliberations. Therefore, the trial court did not abuse its discretion by sustaining the State's objection to the statement.

## <u>Conclusion</u>

Accordingly, for the foregoing reasons, we conclude there was no error in Defendant's trial.

NO ERROR.

Judges ARROWOOD and GRIFFIN concur.