STATE OF NORTH CAROLINA v. ERICK THOMAS EATON, Defendant

No. COA09-1586

(Filed 1 March 2011)

**1. Search and Seizure— baggie with pills abandoned alongside road—no expectation of privacy**

The trial court did not err in a narcotics prosecution by denying defendant's motion to exclude a bag of pills which defendant discarded before complying with an officer's request to return to his patrol car. Defendant was not seized when he discarded the baggie containing the pills beside a public road, and he no longer had a reasonable expectation of privacy in the abandoned property.

**STATE v. EATON**

[210 N.C. App. 142 (2011)]

**2. Appeal and Error—preservation of issues—sentencing**

Defendant's appeal of the issue of whether he was properly sentenced as an habitual offender for trafficking in opium was cognizable even though he did not object at trial.

**3. Sentencing— habitual felon—mandatory drug sentencing**

The trial court did not err by sentencing defendant as an habitual felon after a trafficking in opium conviction where defendant argued that habitual felon status did not apply to increase the mandatory trafficking sentence under Structured Sentencing. A drug trafficker who is not an habitual felon would be subject to enhanced sentencing under N.C.G.S. § 90-95(h)(4), while a drug trafficker who has also attained habitual felon status would be subject to even more enhanced sentencing pursuant to N.C.G.S. § 14-7.6.

**4. Evidence— racial slurs addressed to officers—not prejudicial**

Any error in allowing the introduction of evidence that defendant addressed the arresting officers with racial slurs was not prejudicial given the overwhelming evidence of guilt.

**5. Sentencing— class of offense—clerical error**

An error in characterizing defendant's offense as a Class H felony rather than a Class I felony was clerical only and did not prejudice defendant where he was sentenced as a Class C felon pursuant to the Habitual Felon Act.

Appeal by defendant from an order entered 10 August 2009 and from judgment entered on or about 14 July 2009 by Judge W. Erwin Spainhour in Superior Court, Rowan County. Heard in the Court of Appeals 9 June 2010.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General J. Allen Jernigan, for the State.*

*Sofie W. Hosford, for defendant-appellant.*

STROUD, Judge.

Erick Thomas Eaton ("defendant") appeals from the trial court's denial of his motion to suppress and from his conviction for trafficking in dihydrocodeinone by possession and possession of dihydrocodeinone with intent to sell or deliver, and attaining the status of habitual felon. For the following reasons, we affirm the trial court's order and judgment and remand for correction of a clerical error.

**STATE v. EATON**

[210 N.C. App. 142 (2011)]

## I. Background

On 2 February 2009, defendant was indicted on one count of trafficking "4 grams or more but less than 14 grams of opium or opiate or a preparation of opium or opiate, or a salt, compound, derivative of opium," specifically dihydrocodeinone by possession, pursuant to N.C. Gen. Stat. § 90-95(h)(4) and attaining the status of habitual felon. On 6 July 2009, a superseding indictment was issued against defendant, indicting him for one count of possession with intent to sell and/or deliver "(8.3) grams or twenty (20) dosage units of Dihydrocodeinone, commonly known as Hydrocodone an opiate[,]" pursuant to N.C. Gen. Stat. § 90-95(a). On 9 July 2009, defendant filed a motion to suppress certain evidence obtained by police following a stop of defendant on 9 December 2008. Before defendant's trial on these charges, the trial court conducted a hearing on defendant's motion on 13 July 2009. Following this hearing, the trial court denied defendant's motion to suppress and filed a written order on 10 August 2009. Immediately following this hearing, defendant was tried on the above charges. At the close of the State's presentation of evidence, defense counsel made a motion to dismiss and to consider defendant's *pro se* motion to dismiss for lack of subject matter jurisdiction. The trial court denied both of these motions. Defendant offered no evidence at trial. The defendant renewed his motion to dismiss at the close of all evidence and the trial court also denied this motion.

On 14 July 2009, a jury found defendant guilty of both charges. The trial then proceeded to the habitual felon phase. The State presented three of defendant's prior felony convictions, including (1) a 1990 conviction for larceny from the person, (2) a 1996 conviction for possession with intent to sell and/or deliver cocaine, and (3) a 2008 conviction for possession with intent to sell or deliver marijuana, and copies of those conviction records were submitted to the jury. The jury then found defendant guilty of attaining the status of habitual felon. The trial court consolidated the convictions and sentenced defendant to a term of 133 to 169 months imprisonment. Defendant filed written notice of appeal on 14 July 2009.

## II. Motion to Suppress

[1] Defendant first contends that the trial court erred when it denied defendant's motion to suppress.

It is well established that the standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's

**STATE v. EATON**

[210 N.C. App. 142 (2011)]

findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting. In addition, findings of fact to which defendant failed to assign error are binding on appeal. Once this Court concludes that the trial court's findings of fact are supported by the evidence, then this Court's next task is to determine whether the trial court's conclusions of law are supported by the findings. The trial court's conclusions of law are reviewed *de novo* and must be legally correct.

*State v. Campbell*, 188 N.C. App. 701, 704, 656 S.E.2d 721, 724, (citations, brackets and quotation marks omitted), *appeal dismissed*, 362 N.C. 364, 664 S.E.2d 311 (2008). Here, defendant "failed to assign error" to the trial court's findings of fact in the order denying his motion to suppress. *See id.* Instead, the only assignment of error related to denial of defendant's motion to suppress is directed to the trial court's conclusion of law that the officers had reasonable suspicion of criminal activity to stop and detain defendant. Therefore, the trial court's findings of fact are binding on appeal. *See id.*

The trial court's unchallenged findings of fact are as follows:

1. On 9 December 2008 Officer Adam Bouk, a Salisbury police office[r] with six years experience, was operating a marked Salisbury police cruiser and was in uniform. At 10:00 o'clock P.M. Officer Bouk was on routine patrol near the intersection of North Shaver Street and East Cemetery Street within the city limits of Salisbury, North Carolina. He had been familiar with the neighborhood for almost six years, and he knew it to be an area where illegal drugs were often sold, used and maintained. Within the preceding several months at least five different search warrants concerning drug offenses were executed in the immediate area of the intersection. The weather was cold and it had been raining.

2. As Officer Bouk approached the intersection he observed five people standing in the middle of the intersection. Thinking this was suspicious, he turned on his blue lights and the five people disbursed [sic]-all in different directions. The officer asked them to come back and stand in front of his police car. All but the defendant complied. The defendant continued walking away in an easterly direction along East Cemetery Street. The officer said, "Hey, come back to the car." The defendant began to turn around and face Officer Bouk whereupon the officer saw a white object come out of the left hand of the defendant and fall to the ground. The defendant then walked back to the officer's car. Officer Bouk

retrieved the object which turned out to be a plastic bag containing a large number of pills and white powder residue. The plastic bag was dry. The defendant was placed in handcuffs because of what the officer found in the plastic bag.

3. No physical force was applied to the defendant until he was placed in handcuffs. The defendant was untouched at the time he discarded the plastic bag containing the pills and the white powder residue.

Based on these findings, the trial court concluded that, "under the totality of the circumstances of this matter, [officers] had reasonable, articulable suspicion in a high crime and illegal drug area, to turn on their blue lights and ask the five people standing in the middle of the intersection on a cold, rainy night to come to the front of his police car after they scattered." The trial court also concluded that "[t]his cases is remarkably similar to California v. Hodari D., 499 U.S. 621 (1991) upon which this court relies in this Order [as] . . . the plastic bag containing the pills and powder was not the fruit of a 'seizure' of his person with the meaning of the Fourth Amendment." The court further concluded that "[a] seizure of the defendant had not occurred when the defendant discarded the plastic bag containing the pills and the white powder residue, and the defendant had not yielded to a show of authority at that time."

On appeal, defendant contends that, looking to the totality of the circumstances, "there were not reasonable grounds to detain [defendant] and the trial court erred in concluding that officers had reasonable suspicion that criminal activity was afoot[.]" Defendant argues that "[t]he fact that this incident occurred in a drug area did not supply reasonable suspicion to stop and detain [defendant]" and defendant did not flee from police but merely ignored Officer Bouk's request and walked away from them.

In California v. Hodari D, 499 U.S. 621, 113 L. Ed. 2d 690 (1991), officers were patrolling late one evening in a high crime area. Id. at 622, 113 L..Ed. 2d at 695. As they rounded a corner in their patrol vehicle, "they saw four or five youths huddled around a small red car parked at the curb. When the youths saw the officers' car approaching they apparently panicked, and took flight." Id. at 622-23, 113 L. Ed. 2d at 695. The defendant was one of those youths and he ran through an alley. Id. Officers chased defendant and, upon seeing the officer in pursuit of him, the defendant "tossed away what appeared to be a small rock" and was subsequently tackled and handcuffed by that

officer. *Id.* The officer retrieved the item discarded by the defendant and it was determined to be crack cocaine. *Id.* The defendant moved to suppress this evidence and the trial court denied that motion; the California Court of Appeals reversed, holding that the defendant "had been 'seized' when he saw [the officer] running towards him, that this seizure was unreasonable under the Fourth Amendment, and that the evidence of cocaine had to be suppressed as the fruit of that illegal seizure[;]" the California State Supreme Court denied review; and the United States Supreme Court granted the State's petition for writ of certiorari. *Id.* On appeal, the defendant argued that "the drugs were the fruit of that seizure and the evidence concerning them was properly excluded. If not, the drugs were abandoned by [the defendant] and lawfully recovered by the police, and the evidence should have been admitted." *Id.* at 624, 113 L. Ed. 2d at 695-96. The Court stated the general rule that "the Fourth Amendment's protection against 'unreasonable . . . seizures' includes seizure of the person" but noted that

> [t]he word "seizure" readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful. ("She seized the purse-snatcher, but he broke out of her grasp.") It does not remotely apply, however, to the prospect of a policeman yelling "Stop, in the name of the law!" at a fleeing form that continues to flee. That is no seizure. . . . An arrest requires either physical force (as described above) or, where that is absent, *submission* to the assertion of authority.

*Id.* at 626, 113 L. Ed. 2d at 696-97. The Court went on to hold that the defendant was not seized within the meaning of the Fourth Amendment when he discarded the cocaine because he had failed to comply with the officer's "show of authority" at the time. *Id.* at 628-29, 113 L. Ed. 2d at 699. The Court further determined that "[t]he cocaine abandoned while he was running was in this case not the fruit of a seizure" and "reverse[d] the decision of the California Court of Appeal[.]" *Id.* at 629, 113 L. Ed. 2d at 699.

Here, the facts before us are similar to those in *Hodari D.* The trial court's findings show that Officer Bouk was patrolling at night in "an area where illegal drugs were often sold, used and maintained." While on patrol, Officer Bouk "observed five people standing in the middle of the intersection" and "turned on his blue lights[.]" As the officers approached them, "the five people disbursed [sic]-all in different directions." In a show of authority, "[t]he officer asked them

to come back and stand in front of his police car." All of the others complied, but defendant who "continued walking away in an easterly direction along East Cemetery Street." Officer Bouk again asked defendant to "come back to the car." Defendant stopped and, like the defendant in *Hodari D.*, turned and discarded the plastic baggie before complying with the officer's "show of authority" by submitting to the officer's request and returning to the patrol vehicle. *See id.* at 628-29, 113 L. Ed. 2d at 699. Therefore, defendant was not seized when he discarded the plastic baggie containing the pills.

As defendant contends that the evidence was unlawfully seized, we must determine whether Officer Bouk's recovery of the plastic baggie was reasonable within the limits of the Fourth Amendment. We have stated that "[t]he fourth amendment protects against governmental intrusion into areas in which the citizen has a reasonable expectation of privacy." *State v. Baker*, 65 N.C. App. 430, 438-39, 310 S.E.2d 101, 109 (1983) (citing *Katz v. U.S.*, 389 U.S. 347, 19 L. Ed. 2d 576 (1967)), *cert. denied*, 312 N.C. 85, 321 S.E.2d 900 (1984). The protection of the Fourth Amendment against unreasonable searches and seizures does not extend to abandoned property. *State v. Cromartie*, 55 N.C. App. 221, 225, 284 S.E.2d 728, 730 (1981). "When one abandons property, '[t]here can be nothing unlawful in the Government's appropriation of such abandoned property.'" *Id.* (quoting *Abel v. United States*, 362 U.S. 217, 241, 698, 4 L. Ed. 2d 668, 687 (1960)). In order to determine whether a person has abandoned property for the purposes of the law of search and seizure it must be shown that the defendant "had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." *Id.* at 223, 284 S.E.2d at 730 (citation and quotation marks omitted). "Where the presence of the police is lawful and the discard occurs in a public place where the defendant cannot reasonably have any continued expectancy of privacy in the discarded property, the property will be deemed abandoned for purposes of search and seizure." *Id.* at 224, 284 S.E.2d at 730 (citation, brackets, and quotation marks omitted). Here, the trial court's findings show that defendant discarded the plastic baggie beside a public road. Therefore, we hold that defendant abandoned the plastic baggie as he no longer retained a reasonable expectation of privacy by discarding it "in a public place[.]" *See id.* As defendant had not been seized at the time he discarded the plastic baggie and the plastic baggie was abandoned property, Officer Bouk's recovery of the plastic

baggie did not violate defendant's Fourth Amendment rights. *See California,* 499 U.S. at 626, 113 L. Ed. 2d at 697. Accordingly, we hold that the trial court's findings support its conclusion of law and affirm the denial of defendant's motion to suppress.

### III. Habitual Felon Conviction

**[2]** Defendant next contends that the trial court erred in sentencing defendant as a habitual felon on the charge of trafficking in opium by possession on the grounds that the structured-sentencing statute does not apply to drug trafficking offenses. Defendant argues that because N.C. Gen. Stat. § 90-95(h)(4)(a) prescribes a mandatory sentence for trafficking convictions, the status of habitual felon cannot be used to increase a defendant's punishment for a drug trafficking offense.

The record shows that defense counsel made no specific objection as to the trial court's sentencing defendant as an habitual felon. N.C.R. App. P. 10(b)(1) provides that, "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context" and "obtain a ruling upon the party's request, objection or motion." Thus, an appellant is generally not entitled to appellate review of issues that were not raised before the trial court. However, a criminal defendant may mount an appellate challenge to the validity of his sentence despite the absence of an objection to the trial court's sentencing decision in the court below, pursuant to N.C. Gen. Stat. § 15A-1446(d) (2009), which provides that:

> Errors based upon any of the following grounds, which are asserted to have occurred, may be the subject of appellate review even though no objection, exception or motion has been made in the trial division. . . .

> (18) The sentence imposed was unauthorized at the time imposed, exceeded the maximum authorized by law, was illegally imposed, or is otherwise invalid as a matter of law.

"[N.C. Gen. Stat. § 15A-1446](d)(18) . . . does not conflict with any specific provision in our appellate rules and operates as a 'rule or law' under Rule 10(a)(1), which permits review of [the sentencing issue raised by defendant.]" *State v. Mumford,* 364 N.C. 394, 403, 699 S.E.2d 911, 917 (2010). Since the issue that defendant seeks to raise on

appeal relates to the lawfulness of the sentence that was imposed upon him for trafficking in opium, it is exactly the sort of issue that is cognizable on appeal despite the absence of an objection in the trial court pursuant to N.C. Gen. Stat. § 15A-1446(d)(18). Therefore, defendant's issue is properly preserved for appellate review.

**[3]** Moving to the substance of defendant's argument that individuals convicted of drug trafficking offenses are not subject to enhanced sentencing as habitual felons pursuant to N.C. Gen. Stat. § 14-7.6, we note that defendant relies primarily on the mandatory language of N.C. Gen. Stat. § 90-95(h)(4)(a) (2009), which provides that:

> Notwithstanding any other provision of law, . . . [a]ny person who sells, manufactures, delivers, transports, or possesses four grams or more of opium or opiate, or any salt, compound, derivative, or preparation of opium or opiate . . . shall be guilty of a felony . . . known as "trafficking in opium or heroin" and if the quantity of such controlled substance or mixture involved . . . [i]s four grams or more, but less than 14 grams, such person shall be punished as a Class F felon and shall be sentenced to a minimum term of 70 months and a maximum term of 84 months in the State's prison and shall be fined not less than fifty thousand dollars ($ 50,000)[.]

In defendant's view, the mandatory nature of this language precluded the trial court from sentencing him as a Class C felon based on his habitual felon status. We believe, however, that defendant's argument rests on a misapprehension of the nature and intent of North Carolina's criminal sentencing statutes.

The statutes governing the sentencing of convicted criminal defendants almost universally employ mandatory language directing that a person convicted of a particular offense "shall be punished" as a Class "X" felon or providing that specific terms of imprisonment are authorized for particular offenses and prior record levels. In addition, N.C. Gen. Stat. § 14-7.6 (2009), which governs sentencing of habitual felons, provides, in pertinent part, that:

> When an habitual felon as defined in this Article commits any felony under the laws of the State of North Carolina, the felon must, upon conviction or plea of guilty under indictment as provided in this Article (except where the felon has been sentenced as a Class A, B1, or B2 felon) be sentenced as a Class C felon. . . .

The explicit directive contained in N.C. Gen. Stat. § 14-7.6 to the effect that a defendant found to have attained habitual felon status

"must" be sentenced as an habitual felon is arguably even more mandatory than the language found in N.C. Gen. Stat. § 90-95(h)(4) upon which defendant relies. Finally, N.C. Gen. Stat. § 14-7.6 contains specific exceptions applicable to defendants convicted of Class A, B1 or B2 felonies, making it completely clear that the General Assembly expressly considered the issue of which offenses would be exempted from the enhanced sentencing provisions of this statute and which would not. Needless to say, there is no language in N.C. Gen. Stat. § 14-7.6 excluding individuals convicted of drug trafficking offenses from North Carolina's system for sentencing habitual felons. As a result, the consistent use of mandatory language throughout the sentencing statutes in effect in North Carolina precludes acceptance of defendant's argument, which elevates the importance of the mandatory language contained in N.C. Gen. Stat. § 90-95(h)(4) over the mandatory language found in other sentencing statutes, including N.C. Gen. Stat. § 14-7.6.

In *State v. Parks,* 146 N.C. App. 568, 572, 553 S.E.2d 695, 697 (2001), *appeal dismissed and disc. review denied,* 355 N.C. 220, 560 S.E.2d 355 (2002), *cert. denied,* 537 U.S. 832, 154 L. Ed. 2d 49 (2002), the defendant argued that he could not properly be sentenced as an habitual felon because "the Structured Sentencing Act impliedly repeals the Habitual Felon Act." This Court rejected the defendant's argument, stating that:

> We believe that the two Acts are different, but not conflicting. The Acts reveal that the General Assembly intended to enhance punishments for both types of repeat offenders, but by different means. Structured sentencing applies to all persons committing misdemeanors or felonies, as a mechanism for determining sentences based on the seriousness of the crime and the extent of the defendant's previous record. . . . The Habitual Felon Act elevates the convicted person's status within Structured Sentencing so that the person is eligible for longer minimum and maximum sentences.

*Id.* at 572, 553 S.E.2d at 697-98. We conclude that the same reasoning applies in the context of a defendant convicted of drug trafficking and subject to enhanced sentencing as an habitual felon: the two statutes complement each other and address different means of enhancing punishment. In essence, under the interpretation of the relevant statutory provisions that we believe to be appropriate, a drug trafficker who is not an habitual felon would be subject to enhanced sentencing pursuant to N.C. Gen. Stat. § 90-95(h)(4), while a drug

trafficker who has also attained habitual felon status would be subject to even more enhanced sentencing pursuant to N.C. Gen. Stat. § 14-7.6. A contrary holding could lead to the absurd result that a defendant convicted of simple possession of a controlled substance and of having attained the status of an habitual felon could receive a significantly longer sentence than an habitual felon convicted of drug trafficking on the basis of an act involving the same controlled substance. Furthermore, as a matter of public policy, it is reasonable to assume that the legislature intended to further enhance the sentences of drug traffickers who are also habitual felons rather than ignoring their habitual felon status for sentencing purposes. Therefore, we do not believe that defendant's challenge to the trial court's decision to sentence him as an habitual felon in the case in which he was convicted of trafficking in opium has merit and conclude that the challenged sentencing decision should be left undisturbed.

IV. Admission of Defendant's Statements to Police

[4] Lastly, defendant argues that the trial court erred in allowing the State to offer evidence that defendant addressed the arresting officers with racial slurs. Defendant contends that these statements were not relevant and should have been excluded. However, in the alternative, defendant contends that even if they were relevant, they should have been excluded because they were highly prejudicial as to sway the jury.

At trial, Officer Bouk testified to substantially the same facts as he had at the hearing on the motion to suppress, as described in the trial court's findings of fact above. Over defense counsel's objection, Officer Bouk was allowed to also testify that after defendant was arrested and placed in the back of the patrol vehicle, he became "very belligerent and irate" and "used racial slurs to both me and my partner." Officer Bouk testified that defendant spoke these racial slurs to the officers from the time that he was first placed in the back of the patrol vehicle until they got to the police department. When they took defendant out of the handcuffs, he stopped speaking these slurs to the officers. However, when defendant was again placed in handcuffs, he again spoke racial slurs to both officers "through the magistrate's office into the jail process." The trial court admitted into evidence and the jury viewed a video from the video camera inside Officer Bouk's patrol vehicle which showed the incident in which defendant was arrested on 7 July 2009.

Our Supreme Court has stated that "[a] trial court's ruling on an evidentiary point will be presumed to be correct unless the com-

plaining party can demonstrate that the particular ruling was in fact incorrect." *State v. Herring*, 322 N.C. 733, 749, 370 S.E.2d 363, 373 (1988) (citation omitted). "Even if the complaining party can show that the trial court erred in its ruling, relief ordinarily will not be granted absent a showing of prejudice." *Id.* In order to establish prejudice, the defendant must show that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial" and "[t]he burden of showing such prejudice under this subsection is upon the defendant." N.C. Gen. Stat. § 15A-1443(a)(2009).

Even assuming *arguendo* that admission of Officer Bouk's statements regarding defendant's racial slurs was in error, we hold that they were not prejudicial given the overwhelming evidence of defendant's guilt. Here, defendant was found guilty of possession of dihydrocodeinone with intent to sell or deliver "(8.3) grams or twenty (20) dosage units of Dihydrocodeinone, commonly known as Hydrocodone an opiate[,]" pursuant to N.C. Gen. Stat. § 90-95(a), and trafficking "4 grams or more but less than 14 grams of opium or opiate or a preparation of opium or opiate, or a salt, compound, derivative of opium," specifically dihydrocodeinone by possession, pursuant to N.C. Gen. Stat. § 90-95(h)(4). N.C. Gen. Stat. § 90-95(a)(1) (2009) states that "it is unlawful for any person: . . . . [t]o manufacture, sell or deliver, or possess with intent to manufacturer, sell or deliver, a controlled substance[.]" "An accused has possession of a controlled substance within the meaning of N.C.G.S. Sec. 90-95(a)(1) when he has both the power and the intent to control its disposition or use." *State v. Fletcher*, 92 N.C. App. 50, 56, 373 S.E.2d 681, 685 (1988) (citation and quotation marks omitted). "The jury could reasonably infer an intent to distribute from the amount of the substance found, the manner in which it was packaged and the presence of other packaging materials." *State v. Baxter*, 285 N.C. 735, 738, 208 S.E.2d 696, 698 (1974). As noted above, N.C. Gen. Stat. § 90-95(h)(4) states that

> (4) Any person who sells, manufactures, delivers, transports, or possesses four grams or more of opium or opiate, or any salt, compound, derivative, or preparation of opium or opiate . . . or any mixture containing such substance, shall be guilty of a felony which felony shall be known as "trafficking in opium or heroin" and if the quantity of such controlled substance or mixture involved:
>
> > a. Is four grams or more, but less than 14 grams, such person shall be punished as a Class F felon and shall be sentenced to

a minimum term of 70 months and a maximum term of 84 months in the State's prison and shall be fined not less than fifty thousand dollars ($ 50,000)[.]

N.C. Gen. Stat. § 90-91(d)(4), lists as one of the "Schedule III controlled substances[,]" "[a]ny material, compound, mixture, or preparation containing limited quantities of any of the following narcotic drugs, or any salts thereof unless specifically exempted or listed in another schedule: . . . . 4. Not more than 300 milligrams of dihydrocodeinone per 100 milliliters or not more than 15 milligrams per dosage unit, with one or more active, nonnarcotic ingredients in recognized therapeutic amounts." N.C. Gen. Stat. § 90-90(1)(a), which lists "Schedule II controlled substances[,]" states that "Hydrocodone" is an "[o]pium and opiate, [or] [a] salt, compound, derivative, or preparation of opium and opiate[.]"

Officer Bouk observed defendant toss the plastic baggie that contained the pills from a distance of 20 feet. Officer Bouk testified that although it was nighttime, the area was illuminated by his head-lights, blue lights, and streetlights. Officer Bouk immediately retrieved the plastic baggie from the ground and noted that although it had been raining, the plastic baggie was dry. Elizabeth Reagan, a special agent forensic chemist with the North Carolina State Bureau of Investigation, testified that after chemical analysis, she deter-mined that the plastic baggie that Officer Bouk recovered at the scene contained 19 and one-half dihydrocodeinone tablets, trade name Vicodin or Lortab, weighing 8.3 grams. In the following exchange with defense counsel, Special Agent Reagan explained that dihydrocodeinone, which is a Schedule III substance, is a form of hydrocodone, which is a schedule II substance:

[Agent Reagan]: In general, the scheduling is mainly used in the court system for sentencing and penalties. In the scope of my analysis, there's no difference between Schedule 2 and 3 in terms of identification.

[Defense counsel]: Is there an opiate or hydrocodone that's included in Schedule 2?

A: There is a hydrocodone that is in Schedule 2, but it is not one that we see. Anything that is mixed with another—in this instance it was mixed with acetaminophen. That preparation is what makes it a Schedule 3.

Q: Mixed with acetaminophen makes it a Schedule 3?

A: Any-any mixture would be Schedule 3. In this instance, it was mixed with acetaminophen.

Q: And Lortab?

A: I don't know that this was that brand name, but Lortab is hydrocodone.

Q: Or Vicodin?                                              .

A: Yes. Any-any type of hydrocodone.

Accordingly, the substance found in defendant possession was a Schedule III substance, dihydrocodeinone, which is a form of hydrocodone listed in N.C. Gen. Stat. 90-90(1)(a) as an "[o]pium and opiate, [or] any salt, compound, derivative, or preparation of opium and opiate," satisfying the evidentiary requirements of N.C. Gen. Stat. § 90-95(a) and N.C. Gen. Stat. § 90-95(h)(4)[1]. As there was overwhelming evidence of defendant's guilt, the exclusion of evidence regarding defendant's racial slurs to the officers would not have caused "a different result" at trial. *See* N.C. Gen. Stat. § 15A-1443(a). Accordingly, defendant's argument is overruled.

## V. Clerical error

[5] Although it is not raised by either party, we note a clerical error in the judgment. As stated above, dihydrocodeinone is a Schedule III controlled substance. *See* N.C. Gen. Stat. § 90-91(d)(4). The judgment entered against defendant states that possession with intent to sell or deliver a Schedule III controlled substance is a Class H felony. N.C. Gen. Stat. § 90-95(a)(1) makes it unlawful to possess a controlled substance with the intent to sell or deliver. However, N.C. Gen. Stat. § 90-95(b)(2) provides that violation of N.C. Gen. Stat. § 90-95(a)(1) with respect to "[a] controlled substance classified in Schedule III, IV, V, or VI shall be punished as a Class I felon[y], except that the sale of a controlled substance classified in Schedule III, IV, V, or VI shall be punished as a Class H felon[y]." The indictment, verdict, and judgment all charge defendant with possession with intent to sell or deliver, which is a Class I felony, not sale only, which is a Class H felony. As a result, the offense in question was not properly characterized as a Class H felony but should have been characterized as a Class I felony.

---

1. N.C. Gen. Stat. 90-90(2) also lists "Dihydrocodeine" as a schedule II substance. However, this substance is not at issue in this case.

However, since defendant was actually sentenced as a Class C felon pursuant to the Habitual Felon Act, the error in the judgment did not prejudice defendant in any way and constitutes, at most, a correctable clerical error. *State v. McCormick*, —— N.C. App. ——, ——, 693 S.E.2d 195, 200 (2010) (holding that the inclusion of an incorrect case number on the judgment was a mere clerical error that the trial court should correct on remand). Accordingly, we remand for correction of the clerical error in the judgment which identifies the offense of possession with intent to sell or deliver as a Class H felony; this should be identified as a Class I felony.

## VI. Conclusion

For the foregoing reasons, we affirm the trial court's denial of defendant's motion to suppress and judgment and remand for correction of the clerical error.

AFFIRM TRIAL COURT'S ORDER AND JUDGMENT; REMAND FOR CORRECTION OF THE CLERICAL ERROR.

Judges McGEE and ERVIN concur.