An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1286
NORTH CAROLINA COURT OF APPEALS

Filed: 5 August 2014

STATE OF NORTH CAROLINA

v.                                    Guilford County
                                      Nos. 12 CRS 24422, 76539-40
DWAYNE DEMONT HAIZLIP


Appeal by Defendant from Judgments entered 23 May 2013 by Judge David L. Hall in Guilford County Superior Court. Heard in the Court of Appeals 23 April 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General James D. Concepción, for the State.*

> *The Law Office of Bruce T. Cunningham, Jr., by Bruce T. Cunningham, Jr., for Defendant.*


STEPHENS, Judge.


*Procedural History and Evidence*

On 2 July 2012, the Guilford County Grand Jury returned indictments charging Defendant Dwayne Demont Haizlip with two counts of trafficking in cocaine, one count of possession of cocaine with intent to sell or deliver, and having attained the status of an habitual felon. On 11 March 2013, Defendant moved

to suppress evidence that had been seized on 2 May 2012. The trial court verbally denied that motion during the 11 March 2013 criminal session of the Superior Court of Guilford County, Judge Ronald E. Spivey presiding, and entered its written order on 15 March 2013.

Defendant's trial was originally set to begin on 12 March 2013 before Judge Spivey. Before the trial could begin, however, Defendant's privately retained attorney informed the court that "the professional relationship between myself and my client has completely deteriorated" and requested to withdraw from further representation of Defendant. Speaking on his own behalf, Defendant stated that he no longer wished to be represented by his attorney because the attorney was "very ineffective." The court expressed reluctance to continue the case because the trial was scheduled to begin that day and requested that the parties take some time to work things out. The court also suggested that Defendant change into civilian clothes instead of wearing jail clothes. Defendant refused to accept the clothes offered by the court or to continue with his attorney as counsel and sought to discharge the attorney.

After lengthy discussion, the trial court granted Defendant's motion to discharge his lawyer and continued the

case until 20 May 2013 so that Defendant would have time to procure new counsel. As a result, Defendant signed a waiver of his right to assigned counsel, indicating that he would hire another attorney. At the conclusion of the hearing, the court advised Defendant that he should

> work on this as quickly as you can so that the matter can be tried May the 20th. In your review in court, we'll see that the [c]ourt has bent over backwards to let you state your reasons for the record. That the [c]ourt's concerned about the communication that's been stated by your attorney, and I've given you this opportunity[,] and I'm sure it's at great inconvenience to the State and its officers, but I'm going to give you this 60 days to go out and hire . . . another lawyer and see what you can do with your case.

Defendant's former attorney also indicated his willingness to help Defendant with the process of procuring new counsel. The trial court filed its order the following day, granting Defendant's motion to hire a new attorney and expressly noting that "Defendant [had been informed] he would have to proceed as [p]ro-[s]e if he failed to hire new counsel by the next court date."

Three weeks later, on 1 April 2013, the Guilford County Grand Jury returned superseding indictments charging Defendant with the same offenses as those listed above, but including the

alias "Dwayne Dumont Haizlip" in the box for "Defendant." The following day Defendant appeared before Judge A. Robinson Hassell to informally review his attempts to secure counsel. Defendant stated: "I'm working on it, it's going great. I should have counsel soon." In response, the court reiterated that Defendant should move quickly "because [the trial is] going to happen next time . . . ." The court also explained that "given [Defendant's] declaration last time and the waiver that [he] signed that was accepted by the [c]ourt, [he was] going to be held to that."

Defendant failed to procure new counsel by 20 May 2013. Appearing before Judge David L. Hall, Defendant objected to the trial going forward "on the grounds that it violate[d] his Sixth Amendment right to counsel." Defendant also asserted that he did not wish to represent himself and that he did not have the education or training to do so. Indicating that he was "not inclined to overrule the orders of [Judges] Ronald E. Spivey and . . . A. Robinson Hassell," Judge Hall found that Defendant had given up his right to counsel by failing to retain counsel by his trial date. Accordingly, the court ordered that the trial would go forward despite Defendant's objections. As a result, Defendant represented himself.

The State's evidence at trial tended to show the following: On 2 May 2012, Detective Steve Hollers of the Greensboro Police Department obtained "information about a person[, later identified as Defendant,] who was to be in possession of . . . narcotics" in the area of Old Chapman Street near Murray Hill Road in Greensboro, North Carolina. Detective Hollers and twelve to fifteen other officers responded to the area in an attempt to find Defendant. When they arrived they were briefed that "[Defendant] was reported to be coming into [the] area of Murray Hill [Road] headed to his sister's house . . . to retrieve a quantity of cocaine . . . ." They were told that Defendant would be driving a white Nissan Versa.

While waiting on Old Chapman Street, at the perimeter of the area, Detective Hollers observed Defendant's vehicle and alerted the other officers. Defendant turned off Old Chapman Street onto Murray Hill Road, a dead-end street, toward his sister's house. Detective Hollers and some of the other officers took position at the top of Murray Hill Road, near the intersection with Old Chapman Street, while other officers observed the house.

Approximately fifteen to twenty minutes later, the observing officers informed Detective Hollers that Defendant had

left his sister's house. After leaving the residence, Defendant began driving on Murray Hill Road back toward the intersection with Old Chapman Street. When Defendant's car crested Murray Hill Road and came into Detective Hollers's view, Detective Hollers activated his blue lights, and Defendant stopped his car. Moments later, Defendant "pull[ed] the steering wheel of his vehicle hard to his left and . . . attempted to accelerate around [Detective Hollers and the other officers]. [Defendant] drove off Murray Hill Road . . . into a private resident's . . . front yard." Another officer then used his vehicle to pin and immobilize Defendant's car. Just before Defendant was arrested, he threw an object from his car. A black plastic bag filled with white powder was recovered from the area where the object landed. At trial, the State's forensic scientist testified that the substance in the recovered black plastic bag contained "cocaine hydrochloride . . . with a net weight of 41.62 grams."

Defendant offered no evidence at trial. At the close of all the evidence, Defendant moved to dismiss the charges against him. The trial court denied that motion, and the jury found Defendant guilty of trafficking in cocaine by the unlawful transportation of more than twenty-eight grams but less than 200 grams of cocaine, trafficking in cocaine by the unlawful

possession of more than twenty-eight grams but less than 200 grams of cocaine, and possession of cocaine.

The following day, 23 May 2013, the trial court stated that it would "give [Defendant] a [']line objection[']"[1] to the entire proceeding." Afterward, the jury determined that Defendant had attained the status of an habitual felon. At sentencing, the trial court stated that it would "take into consideration that [Defendant has] a support group in the community." The court later sentenced Defendant as a Class C felon to concurrent terms in the presumptive range of 144 months to 185 months for the trafficking convictions. The court arrested judgment on the possession conviction. Defendant gave notice of appeal in open court.

*Discussion*

On appeal, Defendant contends that: (1) "the trial court prejudicially erred by forcing [him] to proceed *pro se* when [he] did not voluntarily and understandingly waive his constitutional

---

[1] We are unaware of a "line objection" that works to preserve an entire proceeding for appellate review. This appears to be a reference to the practice of objecting to a specified line of questioning during trial, which is only "sufficient to preserve the entire *line of questioning* for appellate review . . . ." *State v. Graham*, 186 N.C. App. 182, 189, 650 S.E.2d 639, 645 (2007) (emphasis added), *disc. review denied*, 362 N.C. 477, 666 S.E.2d 745 (2008).

right to counsel"; (2) "the enhancement [of his sentence from class G to class C] under the Habitual Felon Act for a trafficking offense resulted in a sentence which is unauthorized, illegally imposed[,] and otherwise invalid as a matter of law"; and (3) "the trial court's failure to weigh the mitigating factor of [having] a support group in the community against the lack of any aggravating factors renders the sentence illegally imposed or invalid as a matter of law." We disagree.

*I.   Right to Counsel*

Defendant first argues that the trial court erred by failing to conduct an inquiry on 21 May 2013, in the moments leading up to trial, after it became apparent that no counsel was prepared to represent Defendant. According to Defendant, "the trial court is required to make [a] thorough inquiry under N.C. Gen. Stat. § 15A-1242" before allowing a defendant to proceed without counsel to ensure that the defendant has knowingly and voluntarily assumed the risk associated with proceeding *pro se*. Defendant argues that, because he "did not voluntarily and knowingly waive his right to counsel[,]" the trial court prejudicially erred by allowing him to proceed *pro se*. Because we conclude that Defendant forfeited, rather than waived, his right to counsel, we overrule this argument.

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI; *see also* N.C. Const. art. I, § 23 ("In all criminal prosecutions, every person charged with crime has the right . . . to have counsel for defense . . . ."). Nonetheless, a defendant can proceed in a criminal trial without counsel by voluntarily waiving his right to counsel or by forfeiting his right to counsel through abusing that right. *See State v. Wray*, 206 N.C. App. 354, 357-58, 698 S.E.2d 137, 140 (2010). Whether a defendant waives or forfeits his right to counsel is dependent upon his actions:

> Unlike waiver, which requires a knowing and intentional relinquishment of a known right, forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right. A defendant who misbehaves in the courtroom may forfeit his constitutional right to be present at trial, and a defendant who is abusive toward his attorney may forfeit his right to counsel.

*State v. Montgomery*, 138 N.C. App. 521, 524-25, 530 S.E.2d 66, 69 (2000) (citations, internal quotation marks, brackets, and ellipses omitted). Moreover, a defendant can "lose his constitutional right to be represented by counsel of his choice when he perverts that right to a weapon for the purpose of

obstructing and delaying his trial." *Id.* at 524, 530 S.E.2d at 69. Therefore, when a defendant exploits his right to counsel by acting abusively toward his attorney or using the right in an effort to obstruct and delay trial proceedings, he forfeits, rather than waives, the right. *State v. Leyshon*, 211 N.C. App. 511, 517-18, 710 S.E.2d 282, 288 (2011) ("A forfeiture [of the right to counsel] results when the [S]tate's interest in maintaining an orderly trial schedule and the defendant's negligence, indifference, or possibly purposeful delaying tactic, combine to justify a forfeiture of [the] defendant's right to counsel."). "Any willful actions on the part of the defendant that result in the absence of defense counsel constitutes a forfeiture of the right to counsel." *Id.* at 518, 710 S.E.2d at 288 (citation omitted). "The standard of review for alleged violations of constitutional rights is *de novo*." *State v. Graham*, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009), *disc. review denied*, 363 N.C. 857, 694 S.E.2d 766 (2010).

Because forfeiture of the right to counsel may occur regardless of whether a defendant intended to relinquish that right, an inquiry under section 15A-1242 is not always required when a defendant proceeds *pro se*. *See State v. Boyd*, 200 N.C.

App. 97, 102, 682 S.E.2d 463, 467 (2009), *disc. review denied*, __ N.C. __, 691 S.E.2d 414 (2010). As a general rule, a section 15A-1242 inquiry requires the trial court to determine whether a *pro se* defendant was advised of his right to counsel, understands the consequences of proceeding *pro se*, and comprehends the gravity of the charges against him. N.C. Gen. Stat. § 15A-1242 (2013). When a section 15A-1242 inquiry is necessary, "[t]he [trial] record must affirmatively show that the inquiry [under section 15A-1242] was made and that the defendant, by his answers, was literate, competent, understood the consequences of his waiver, and voluntarily exercised his own free will." *State v. Callahan*, 83 N.C. App. 323, 324, 350 S.E.2d 128, 129 (1986), *disc. review denied*, 319 N.C. 225, 353 S.E.2d 409 (1987). "[T]he attempt to change counsel when the case was called for trial, which would have resulted in the disruption and obstruction of orderly procedure in the court, must be charged to the defendant," however. *See State v. Montgomery*, 33 N.C. App. 693, 697, 236 S.E.2d 390, 392, *disc. review denied*, 293 N.C. 256, 257 S.E.2d 258 (1977).

In *Boyd*, we held that the defendant forfeited his right to counsel when he "delayed the trial court proceedings by refusing to cooperate with either of his appointed attorneys . . . ." 200

N.C. App at 103, 682 S.E.2d at 467. The defendant's counsel stated that the defendant was "totally uncooperative" and "repeatedly told [his counsel] that [his] case was not going to be tried." *Id.* (internal quotation marks and ellipsis omitted). Because the defendant forfeited, rather than waived, his right to counsel in that case, we held that the trial court did not err when it failed to conduct a section 15A-1242 inquiry. *Id.* at 101-03, 682 S.E.2d at 466-67; *see also State v. Quick*, 179 N.C. App. 647, 648-50, 634 S.E.2d 915, 917 (2006) (holding that the defendant's failure to retain counsel for roughly eight months constituted obstruction and delay of proceedings, resulting in forfeiture of his right to counsel); *Montgomery*, 138 N.C. App. at 525, 530 S.E.2d at 69 (holding that the defendant's failure to retain counsel for more than fifteen months warranted forfeiture and absolved the trial court of its duty to conduct an inquiry under section 15A-1242 when the defendant was "twice appointed counsel as an indigent; twice . . . released his appointed counsel and retained private counsel . . . [;] was disruptive in the courtroom on two occasions, resulting in the trial being delayed . . . [; and] refused to cooperate with [one attorney and assaulted the attorney], resulting in an additional month's delay at trial").

Here, Defendant exhibited a pattern of refusing to cooperate with his attorney. On 16 October 2012, Defendant was asked in court if he would accept a plea agreement. In response, Defendant stated that he had not seen the plea agreement and his lawyer had not described it to him. When the plea was read for a second time and Defendant was again asked if he understood and accepted the plea deal, Defendant remained silent. On 12 March 2013, the day the trial was first set to begin, Defendant became uncooperative with his privately retained attorney after the court denied a motion to suppress. According to the attorney, Defendant responded to counsel's attempts to communicate with statements like, "I don't want you to represent me." Defendant alleged his attorney was ineffective, sought a continuance to hire new counsel, and relinquished his right to appointed counsel. The trial court granted Defendant's motion to discharge his attorney and set a follow-up hearing a few weeks later to ensure that Defendant was making progress toward hiring new counsel. Defendant's former attorney also indicated that he would "be happy to contact [the new attorney], give [that person the] entire file[,] and speak with [that person] with regard to . . . the case." At the 2 April 2013 follow-up hearing, Defendant indicated that he was "working on" procuring counsel,

it was "going great," and he "should have new counsel soon." Despite these representations and persistent efforts by the court to ensure fair treatment, Defendant failed to procure counsel by the date of his trial, approximately two months after his initial trial date.

At a minimum, these actions constitute negligence or indifference on the part of Defendant in failing to obtain an attorney. At the most, they constitute a purposeful delaying tactic meant to frustrate the trial of his case. In any event, they are sufficient to constitute a forfeiture of Defendant's right to counsel. *See Boyd*, 200 N.C. App. at 101–02, 682 S.E.2d at 467; *see also Quick*, 179 N.C. App. at 648–50, 634 S.E.2d at 917–18; *Montgomery*, 138 N.C. App. at 524–25, 530 S.E.2d at 69. Therefore, Defendant was not entitled to a section 15A-1242 inquiry, and the trial court did not err by failing to conduct one. Defendant's first argument is overruled.

*II.  The Habitual Felon Act*

Second, Defendant argues that the trial court erred by enhancing his sentence under section 14-7.6 of the Habitual Felon Act ("the Act"). He contends that N.C. Gen. Stat. § 90-95(h)(3), which criminalizes the trafficking of cocaine,

includes a mandatory sentence that may not be enhanced. We disagree.

Section 90-95(h)(3) provides in pertinent part that an individual found guilty of trafficking in "28 grams or more, but less than 200 grams . . . *shall be punished as a Class G felon and shall be sentenced to a minimum term of 35 months and a maximum term of 51 months . . . .*" N.C. Gen. Stat. § 90-95(h)(3)(a) (2013) (emphasis added). Before 2011, the Act, codified in section 14-7.6 of the North Carolina General Statutes, provided the following additional direction:

> When an habitual felon as defined in this Article commits any felony under the laws of the State of North Carolina, the felon must, upon conviction or plea of guilty under indictment as provided in this Article (except where the felon has been sentenced as a Class A, B1, or B2 felon) be sentenced *as a Class C felon*. . . .

2011 N.C. Sess. Laws 192, sec. 3.(d) (emphasis added).

Interpreting those provisions, we held in *State v. Eaton* that while sentences under drug trafficking statutes are mandatory, sentences under the Act are "arguably even more mandatory." 210 N.C. App. 142, 151, 707 S.E.2d 642, 648, *disc. review denied*, 365 N.C. 202, 710 S.E.2d 25 (2011). There the defendant was charged with trafficking in opium in violation of section 90-95(h)(4). *Id.* at 144, 707 S.E.2d at 644. The

defendant argued that because section 90-95(h)(4)(a) "prescribes a mandatory sentence for [drug] trafficking convictions, the status of habitual felon cannot be used to increase a defendant's punishment for a drug trafficking offense." *Id.* at 149, 707 S.E.2d at 647. The *Eaton* court disagreed, reasoning that section 14-7.6 contained an "explicit directive[,]" which validated the enhancement of defendant's drug trafficking sentence. *Id.* at 150-151, 707 S.E.2d at 648. In addition, the Court observed that section 14-7.6 "contains specific exceptions applicable to defendants convicted of Class A, B1[,] or B2 felonies, making it completely clear that the General Assembly expressly considered the issue of which offenses would be exempted from the enhanced sentencing provision of this statute and which would not." *Id.* at 151, 707 S.E.2d at 648. Lastly, this Court noted that "the consistent use of mandatory language through the sentencing statutes" made it clear that the Act would serve little purpose if interpreted according to the defendant's argument. *See id.* Therefore, we concluded in *Eaton* that the explicit directive in the Act, the lack of inclusion of drug trafficking in a list of excepted felonies, and the adverse implication of a contrary ruling meant the Act could be used to enhance a drug trafficking conviction despite the language of

section 90-95. *Id.* at 151–52, 707 S.E.2d at 648. That rationale remains applicable today.

Defendant argues that recent and applicable revisions to section 14-7.6, which change the requirements for enhancing a conviction and make the decision to charge an eligible defendant as an habitual felon discretionary, render our holding in *Eaton* outdated and incorrect. Because the revised Habitual Felon Act only grants the prosecutor the discretion to *charge* an eligible defendant as an habitual felon and leaves untouched the portion of the Act that stipulates a convicted habitual felon *must* be sentenced as such, we disagree.

The current version of the Act reads as follows:

> When an habitual felon as defined in this Article commits any felony under the laws of the State of North Carolina, the felon must, upon conviction or plea of guilty under indictment as provided in this Article (except where the felon has been sentenced as a Class A, B1, or B2 felon) be sentenced *at a felony class level that is four classes higher than the principal felony for which the person was convicted; but under no circumstances shall an habitual felon be sentenced at a level higher than a Class C felony.* . . .

N.C. Gen. Stat. § 14-7.6 (2013) (emphasis added). The Act also states that the prosecutor's decision to charge a qualifying defendant as an habitual felon is discretionary. N.C. Gen. Stat.

§ 14-7.3 (2013) ("The district attorney, in his or her discretion, may charge a person as an habitual felon pursuant to this Article.").

We review alleged sentencing errors *de novo*. *See State v. Reynolds*, 161 N.C. App 144, 149, 587 S.E.2d 456, 460 (2003). This Court may determine whether a "sentence imposed was unauthorized at the time imposed, exceeded the maximum authorized by law, was illegally imposed, or is otherwise invalid as a matter of law" regardless of whether the defendant objected to the sentence at sentencing. N.C. Gen. Stat. § 15A-1446(d)(18) (2013).

Contrary to Defendant's assertions, *Eaton* remains controlling. Section 14-7.6 still states that an habitual felon "must" be sentenced at a higher level. *See* N.C. Gen. Stat. § 14-7.6. The amendments to the Act, applicable here, only change whether a prosecutor must charge an eligible defendant as an habitual felon and the *extent* to which an habitual felon's sentence must be enhanced, not *whether* the sentence of an habitual felon may be enhanced. In this case, Defendant was convicted of trafficking, a Class G felony. Defendant also had three prior felony convictions and was found guilty of having attained habitual felon status. Therefore, Defendant's sentence

was enhanced to a Class C felony, four levels higher than Class G. This enhancement is permitted by section 14-7.6 and *Eaton*. Accordingly, the trial court's enhancement of Defendant's sentence was proper.

   *III. Mitigating Circumstances*

   Defendant's final argument is that the trial court erred by failing to make a written finding and weigh the existence of a support system in the community as a mitigating factor during sentencing.[2] According to Defendant, the trial court's statement at trial that it would "take into consideration that [Defendant has] a support group in the community" required the court to "make a written finding of a statutory mitigating factor" and formally consider this factor at sentencing. Defendant argues that the trial court's "failure to find that a mitigating factor

---

[2] Although Defendant did not specifically object to the failure to mitigate his sentence, we note that "[a] defendant properly preserves the issue of a sentencing error on appeal despite his failure to object during the sentencing hearing." *State v. Paul*, __ N.C. App. __, __, 752 S.E.2d 252, 253 (2013) (citation omitted); *see also* N.C. Gen. Stat. § 15A-1446(d) ("Errors based upon any of the following grounds, which are asserted to have occurred, may be the subject of appellate review even though no objection, exception[,] or motion has been made in the trial division. . . . The sentence imposed was unauthorized at the time imposed, exceeded the maximum authorized by law, was illegally imposed, or is otherwise invalid as a matter of law.").

existed, after stating on the record that it existed, resulted in an unlawful sentence. . . ." We disagree.

To support his argument Defendant cites *State v. Lopez*, 363 N.C. 535, 618 S.E.2d 271 (2009), for the proposition that once a court finds the existence of a mitigating factor, it must weigh that factor against any aggravating factors to "decide[] whether to impose[] an aggravated, presumptive, or mitigated sentence." This argument is misplaced. The issue in this case is whether the trial court's statement that it "[would] take into consideration that [Defendant has] a support group in the community" demands that the court make and take into account a written finding of a statutory mitigating factor. In *Lopez*, our Supreme Court considered "the extent to which a party in a criminal case may address the jury as to [a] defendant's potential sentence." *See Lopez*, 363 N.C. at 535, 681 S.E.2d at 271. *Lopez* does not address whether an oral statement by a trial court considering the existence of mitigating circumstances must be addressed at sentencing. *See id.* We conclude it does not.

When resolving discrepancies between oral and written findings, "the better course is to err on the side of caution and resolve in the defendant's favor the discrepancy between the trial court's statement in open court, as revealed by the

transcript, and the sentencing form." *State v. Morston*, 336 N.C. 381, 410, 445 S.E.2d 1, 17 (1994). In *Morston*, our Supreme Court was tasked with resolving a discrepancy between an oral finding and a sentencing sheet. *Id.* at 409–10, 445 S.E.2d at 17. At trial, the court orally stated: "[T]he court will find as aggravating factors, aggravating factor No. 4b, that the offense was committed to *hinder* the lawful exercise of a governmental function or the enforcement of the law . . . ." *Id.* at 409, 445 S.E.2d at 17 (brackets omitted; emphasis in original). On the defendant's sentencing sheet, however, the court also found that "the offense was committed to *disrupt* the lawful exercise of a governmental function or the enforcement of laws." *Id.* (brackets omitted; emphasis added). Our Supreme Court decided that the conflict between "hindering" and "disrupting" should be decided in the defendant's favor and vacated the sentence. *Id.* at 410, 445 S.E.2d at 18.

Here, unlike in *Morston*, there is no discrepancy between the trial court's oral statement and Defendant's sentencing form. The trial court did not state that it was *finding* the existence of a mitigating factor in one circumstance and fail to do so in another. The trial court merely stated that it would consider the existence of Defendant's support system. Moreover,

none of Defendant's cited authority holds that a trial court's oral statement suggesting the existence of a support system constitutes a formal finding of a mitigating factor, and we cannot find any such authority. Because the trial court's oral statement does not constitute a formal finding, we hold that the court did not err when it sentenced Defendant in the presumptive range. Defendant's argument is overruled.

NO ERROR.

Judges GEER and ERVIN concur.

Report per Rule 30(e).